HIGGINS, Justice.
 

 This is an action for specific performance of two alleged contracts, designated as bonds for deed, to sell and transfer immovable property by the defendant to the plaintiff. The plaintiff is also seeking a judgment for the fruits and revenues derived from the property by the defendant, after the plaintiff had made the agreed payments and was entitled to have the lands transferred to him; and for interest, from the respective dates of payment, on the amounts received by the defendant. In the alternative, the plaintiff prayed for judgment against the defendant for the full amount paid under the agreements, with interest, from the respective dates of payments.
 

 Defendant filed exceptions of no right and no cause of action, which were overruled, and a general denial, averring that the plaintiff had no rights whatever under the contracts sued upon. The defendant also filed a plea of prescription of one year in bar of plaintiff’s right to recover the fruits and revenues received by the defendant, and a plea of prescription of one, three, five and ten years in bar of plaintiff’s right to recover, by alternative demand, the purchase price paid to the defendant.
 

 The judgment of the district court granted the plaintiff specific performance of the agreements to transfer and deliver the immovable property, but rejected his demands for the fruits and revenues received from the property by the defendant.
 

 The defendant appealed and the plaintiff answered the appeal, asking that the judgment of the lower court be amended by granting plaintiff further judgment against the defendant for the value of the fruits and revenues received from the land, with interest from the dates of receipt thereof, or, in the alternative, that judgment be rendered in his favor for the full amount paid to the defendant under the contracts, with interest from the respective dates of payments.
 

 The exceptions of no right and no cause of action were predicated on the
 
 *36
 
 ground that the plaintiff failed to allege affirmatively that there was an extension of time for the payments of the respective installments due under the contracts - and that the agent, who signed the contracts for the defendant corporation, and the agent who received the alleged payments were properly authorized. In the petition, it is alleged that the defendant corporation entered into the two contracts to sell the lands to the plaintiff for an agreed price- and that the plaintiff paid the defendant the full amount of the agreed purchase price and, under the terms of the contracts, was entitled to have a warranted title to the property. It was, therefore, indirectly alleged that the representatives of the corporation in signing the contracts of sale and receiving payments were authorized. If the defendant were not satisfied with these general allegations and wanted the plaintiff to be more specific in alleging the facts, an exception of vagueness would have been the proper plea. It is clear that the defendant was not entitled to have the plaintiff’s petition dismissed, under the circumstances. The trial,judge, therefore, properly overruled the exceptions.
 

 The record shows that the defendant, a Louisiana corporation, owned a great many acres of land from which it had removed timber. It was desirous of selling these cut-over lands and engaged L- G. Byerly Land Company of Kansas City, Mo., to act as its agent. On February 28, 1916, the L.- G. Byerly Land Company, defendant’s agent, entered into two contracts with the plaintiff (an elderly man living at Preston, Mo.) to sell him two tracts of land, each containing eighty-six acres, situated in Sabine Parish, La., for a total price of $3,010. At the time the two contracts were entered into on February 28, 1916, the plaintiff received credit for a down payment of $179.28 on each of the two contracts and executed notes for the unpaid balance of the purchase price, as follows: Two notes for $265.16 each, due March 1, 1917; two'notes for $265.14 each, due March 1, 1918; two notes for $265.14 each, due March 1, 1919; two notes for $265.14 each, due March 1, 1920; and two notes for $265.14 each, due March 1, 1921.
 

 It appears that the plaintiff had sold the defendant company a portable sawmill, which he had used in his lumber operations in Louisiana, for the sum of $2,000, and received credits on the ten above described notes amounting to $1,910, as follows: On the two notes of $265.16, he was credited with a payment of $155.16 each and on the remaining eight notes of $265.14 each, he was credited with a payment of $155.14 on each note.
 

 The two contracts were forwarded by the L. G. Byerly Land Company to the defendant, and on March 8, 1916, the defendant executed the two contracts (describing them as “bonds for deed”) to sell and transfer the lands to the plaintiff for the price agreed -upon.
 

 The plaintiff paid the notes due in 1917, 1918, 1919 apd 1920 to the defendant’s agent, L. G. Byerly Land Company, which presented them for collection and surrendered them to the plaintiff upon payment. It appears that all of the cancelled notes and checks in payment thereof were
 
 *38
 
 destroyed by the plaintiff’s grandchildren, except the two notes of March 1, 1919 for $265.14 each, which were produced and filed in the record.
 

 The plaintiff did not pay the last two notes due in 1921, and apprised the defendant’s real estate agent of his inability to meet them at that time, as he had been unable to profitably sell his cattle. On April 28, 1922, the defendant’s real estate agent wrote plaintiff a letter, claiming a balance due of $247.50 on the two tracts of land involved and the plaintiff paid this amount to the agent by two checks, i. e., one for $154.12, dated October 28, 1922, and another for $93.38, dated December 18,1922, both drawn on the Bank of Preston, Preston, Mo. These payments were received without objection. Plaintiff then wrote the defendant company certain letters, requesting that an act of sale of the lands be made to him, as he had paid the purchase price in full, but he received no reply to these communications. In the latter part of 1929, he went to Zwolle, La., where the defendant corporation had its place of business, and demanded an act of sale of the property from P. T. Sander-son, general manager of the defendant company, the same representative who signed the contracts of sale or “bonds for deed.” He declined to have the defendant execute an act of sale of the property, on the ground that the records of the company failed to show full payment of the purchase price. It was also shown that in the beginning of the transaction, the defendant notified the plaintiff by letter of the amount of the taxes due, but later neglected to give this information, and, as the property remained assessed in the name of the defendant, it paid the taxes due on the lands since 1919.
 

 The record also shows that on December 11, 1929, defendant executed an oil and gas lease upon these two tracts of land for which it received $2,580, or $15 per acre, and also a yearly rental of $1 per acre on December 11, 1930 and December 11, 1931, to keep the lease in effect, and retained these monies and: refused to pay them to the plaintiff.
 

 The defendant’s evidence tends to show that the company’s books had been kept in: an old house and were badly neglected, and that its records, prior to 1920, were unavailable. The bookkeeper of the defendant testified that in one of the loose-leaf ledgers it appeared that the last two notes of the plaintiff were charged off as a loss for nonpayment. There is no direct evidence by any witness for the defendant to the effect that he knew these notes were not paid. On the other hand, the plaintiff’s testimony is corroborated by the documentary evidence consisting of the letter of the defendant’s agent claiming a balance of $247.50, and the two checks representing payment thereof, one of October 28, 1922 for $154.12, and the other dated December 18, 1922, for the sum of $93.38. The trial judge having found that the plaintiff had sufficiently shown that he had complied with the contract by paying the full purchase price and was therefore entitled to specific performance, we see no reason to take issue with him, as the evidence supports his views.
 

 Defendant contends here that the plaintiff was not entitled to specific performance because some of the payments were made later than their due dates and because
 
 *40
 
 the plaintiff never surrendered the contracts or “bonds for deed.” It is sufficient to say that the defendant accepted the plaintiff’s money for these tardy payments and also peremptorily refused to execute a warranty act of sale to the lands. The defendant cannot retain plaintiff’s money, even though paid tardily, and refuse to transfer the lands. The arbitrary refusal to execute the act of sale dispensed with the necessity of tendering the contracts of sale or “bonds for deed!” Greater New Orleans Homestead Ass’n v. Harvey, La.App., 158 So. 852, and MacLeod v. Hoover, 159 La. 244, 105 So. 305.
 

 With reference to the taxes, it appears that the lands in question remained assessed in the name of the defendant, together with other lands it owned, and that originally it sent the plaintiff a bill for his share of the taxes, but later failed to do so. No demand had been made upon the plaintiff since 1919 by the defendant for his pro rata of the taxes. The record conclusively shows that since December 1929, when the property was leased by defendant for oil and gas purposes, it had in its possession more than an adequate sum of money belonging to the plaintiff to reimburse itself for the taxes. Therefore, the defendant cannot complain on this score for the reason that it was because of its own failure to notify the plaintiff of the amount due that he did not pay the taxes and, furthermore, the defendant having in its own hands sufficient funds of the plaintiff to pay the taxes, it is now unnecessary for the plaintiff to make a tender of the amount due for taxes.
 

 It is our opinion that the judge ’of the lower court erred in not granting the plaintiff judgment against the defendant for the fruits and revenues derived by the "defendant from the property, subject to a credit for whatever taxes the defendant paid for the plaintiff’s account.
 

 The defendant’s plea of prescription of one year against the plaintiff’s demand for the fruits and revenues is based on the fact that this is a claim for damages ex delicto. The plaintiff contends that this is a claim for damages for the breach of an executory contract and is, therefore, a personal action and prescribed by ten years. It is clear that the plaintiff’s claim is predicated upon an alleged breach of the contract by the defendant, and the damage, consisting of the illegal deprivation of the plaintiff of the fruits and revenues of the property by the defendant, is the immediate and direct consequence of the violation. It is our opinion that this is a personal action prescribed by ten years. Arts. 3 and 29, Code of Practice; R.C.C.j Art. 3544; P. Oliver & Sons, Inc., v. Board of Com’rs of Lake Charles Harbor & Terminal Dist. et al., 181 La. 802, 160 So. 419; Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742; Da Ponte v. Ogden et al., 161 La. 378, 108 So. 777; General Accident, Fire & Life Assur Corporation, Limited v. Ross, 155 La. 545, 99 So. 443; Illinois Cent. R. Co. v. New Orleans Terminal Company, 143 La. 467, 78 So. 738; Ford v. Russell, 13 La.App. 390, 128 So. 310.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of
 
 *42
 
 Ihe district court is amended by granting the plaintiff, Charles Bandel, further judgment against the defendant, Sabine Lumber Company, in the sum of $2,924, with 5% interest on $2,580 thereof from December 11, 1929, until paid, and 5% interest on $172 thereof from December 11, 1930, until paid, and 5% interest on $172 thereof from December 11, 1931, until paid,"subject to a credit of such taxes as the defendant might have paid upon the two tracts of land in question from 1919 to date, plus 5% interest thereon from the respective dates of payment. In all other respects, the judgment is affirmed and the case remanded to the district court for the purpose of determining the amount of taxes paid by the defendant on the two tracts of land since 1919, the said sum to be offset against the amount of the above monied judgment. Appellant to pay all costs.
 

 O’NIELL, C. J., does not take part.