GLADNEY, Judge.
This case presents an appeal by the defendant, Caswell W. Oden, from a judgment rendered against him in favor of the plaintiffs, Johnnie Beeson and Gloria Jean Beeson, “in the full sum of $600.00, less a credit of $400.00 represented by a note filed in evidence, Defendant to pay all costs of this suit * * * No answer to the appeal has been filed.
Plaintiffs’ petition was filed March 30, 1950, for injunctive relief to restrain the negotiation of a promissory note given in payment of certain contractual work. It alleges the note was obtained through fraud and that it should be decreed null and void. In addition thereto damages for $1,000 and $350 attorney’s fees were claimed for breach of contract. As grounds for the issuance of a restraining order and preliminary writ of injunction, petitioners averred they would “suffer immediate irreparable injury as it is feared and believed that defendant will disburse funds so received and a money judgment against him could not be collected.” The Court granted a restraining order and signed a rule nisi requiring defendant to show cause why a preliminary injunction should not issue. Defendant, by plea of no cause and no right of action excepted to the petition as not alleging grounds for injunctive relief, and then answered the rule. The exception was overruled and the writ of injunction issued as prayed for, whereupon defendant filed a motion to dissolve the writ averring the petition disclosed plaintiffs’ demands were compensable by a money judgment and therefore subject to an adequate remedy at law. The motion was denied whereupon defendant filed his answer in the form of a general denial and by way of reconvention claimed the full amount of the promissory note with interest and attorney’s fees and certain damages resulting from the illegal issuance of the writ. Following trial the aforementioned judgement was rendered.
The bone of contention between the parties relates to certain contractual work done by defendant for plaintiffs upon a garage apartment pursuant to a written contract dated February 15, 1950. As the job progressed the parties on March 6, listed in writing certain extra work to be done by the defendant for $400. It was for this amount the note was executed and delivered to defendant on March 20, 1950. Plaintiffs occupied the premises on March 14, 1950, at which time presumably the job was substantially complete and accepted by the owners. During the trial plaintiffs abandoned the complaint against the manner of performance of the contract for extra work. Our, consideration will, therefore, be limited to the disputed items mentioned in the original and amended petitions and embraced in the initial contract, which provides:
“Date February 15, 1950
“To Johnnie Beeson 638 Topeka, Shreveport, La.
“We propose to perform the following work on garage apartment at rear of 3942 Mangum, furnishing all materials and labor, and using any salvage material the use of which will not detract from quality of job:
“Remove five feet from front of present structure. Build unto side of structure left two rooms, approximately 10' x 10', with one-way roof, and asphalt tile floors over solid concrete slab. Complete balance of apartment by sheetrocking ceiling and tex- *223 tone walls and ceiling. Add approximately five feet to present bath, install new shower stall and lavatory, also new hot water heater. Build large closets in hath and suitable closets, if wanted, in dining area. Install asphalt tile floors throughout. Wire entire apartment, including fixtures, fixture allowance not to exceed thirty dollars. Paint all new work outside two coats, and all new work inside two coats, Build storage house, 14' x 10', unsealed, no floor, one door, no painting.
“For the sum of $1,750.00 payable $600.00 with contract, $600.00 when roof of two new rooms is felted, and $550.00 when job is completed.”
The unsatisfactory work complained of is listed in the original petition as:
“1. No provisions made to keep water out of front door.
“2. No flashing over windows.
“3. Hood over door not properly flashed.
“4. Concrete slab poured on six (6) inches of fill dirt with no provisions made to retain fill dirt around edges of slab.
“5. The roof is not of sufficient strength to support a large snow or firemen that might be called to combat a fire.
“6. The roofing does not project to the outer edges of wood cornish (sic) or decking which will cause immediate rot.
“7. Sheet rock not properly nailed or finished.
“8. Shower not water proof.
“9. Sink not properly installed.
“10. No provisions made to enter attic.
“11. Portions of outside walls with only one coat of paint.
“12. Too many siding joints on one (1) studding.
“13. Holes in outer walls large enough for wood rats to enter the house.”
By amended petition it was alleged that certain violations of the Shreveport Building Code occurred in the construction work and were reported by the Shreveport Building Inspector. During trial it was admitted that no prosecution was attempted by the authorities following such report and we must assume they were without merit. Testimony relative to the items so involved was heard upon the trial and we are not persuaded the work as done will leave the structure in an unsafe condition. Our impression is that the Shreveport ordinance is for the purpose of requiring only that construction work must be such that a certain standard of safety will be imposed and that there is no intent that the law should otherwise interfere with the right of individuals to contract as cheaply and as conveniently as possible.
Upon the witness stand defendant frankly admitted that the items listed as 1, 6,9, 11 and 13 were minor defects which could be repaired at a cost of $25 or $30, but that he had been prevented from doing so by the unexpected and premature filing of the suit. He contended that the contract did not provide for flashing as complained of in items 2 and 3.. In this we agree. Plaintiffs unquestionably desired the work to be done with as little expense to them as possible, and apparently they obtained a close price, one it appears in which the contractor had no profit, and perhaps a loss. .
The evidence as to the remaining disputed items, viz., 4, 5, 7, 8, 10 and 12, is persuasive that there was substantial compliance with the terms of the contract, especially so when we consider that manifestly the owners did not expect a high class job. Item 4, involving the concrete work, furnishes the most serious objection to the work.
The defendant sublet the concrete work. Appellees contend that the concrete was placed on top of a 6" fill of new dirt and that the pilings spaced at intervals to anchor the concrete to firm ground did not reach to the firm clay. It was acknowledged by defendant that one of the pilings *224 went only to a depth of 11" and not the 30" as testified to by his subcontractor, and other witnesses. There is no complaint that there has been any sinking of the concrete floor and we assume that the other pilings were properly set and are sufficient to hold the concrete slab in place. Witnesses also1 testified that dirt had washed from around the edges of the concrete. This seems trivial and can be replaced.
In our opinion the defendant substantially complied with his contract. Conceding that there were some items of a minor nature that could be easily corrected, we think that more than likely these ‘ omissions would have been remedied had not plaintiffs filed suit in such a hasty manner.' Furthermore, plaintiffs have furnished no specific evidence as to the costs of repairing such défective work, as has been shown, in the absence of which we will accept the figure of $30 as testified by the defendant.
Appellant asserts that the occupancy of the structure prior to complaint constituted a ratification and acceptance of the contract and plaintiffs cannot now complain of the defects which have been pointed out. We do not concur in this contention. The circumstances indicated plaintiffs were forced to move in on the date of completion and defendant offered no objection.
Articles 2765, 2769, R.C.C.; Harry Borrosky v. Hill, Harris & Company, Inc., 1925, 1 La.App. 431; Di Franco v. Ascani, 1930, 13 La.App. 2, 127 So. 76; Wickliffe v. Cooper & Sperier, 1928, 167 La. 689, 120 So. 52; Vazquez v. Gairens, La.App.1946, 26 So.2d 319.
In Brandin State Company v. Bannister, La.App.1947, 30 So.2d 877, 879, McBride, J., after stating the rule to be well settled that a contractor may recover the value of work done 'by him, even though it be unfinished or 'defective, the remedy of the owner 'being a reduction of the price to an amount necessary to perfect or complete the work, approved the ruling of Judge Claiborne in A. F. Peterson v. Peralta, 1926, 3 La.App. 516, holding that where there is no evidence contained in the record exhibiting the amount of damages suffered 'by reason of the contractor’s failure to perform the contract in a manner consistent with the specifications, the Court must, under the established jurisprudence, grant the contractor a judgment for the full contract price. We think the ruling applicable here, as to such defects in workmanship, since the estimation of costs by plaintiffs’ witnesses was purely of a general nature and apparently not controlled by the standard of work contemplated by the contracting parties.
Certainly, in view of plaintiffs’ complete abandonment of complaints as to the extra work, payment of which was evidenced by the promissory note, the judgment must be amended to allow interest and attorney’s fees as stipulated therein. Likewise it follows that there was no basis for the allegations of fraud upon which plaintiffs predicated the right to injunctive relief.
Plaintiffs’ petition alleges as entitlement for the issuance of an injunction the following grounds:
“That defendant having the note in his control may negotiate said note to a holder in due course and petitioners fear and believe that he will do’ so, in which case petitioners would suffer immediate irreparable injury as it. is feared and believed that defendant will disburse funds so received and a money judgment against him could not be collected.
“That in order to protect petitioners' rights in the premises it is necessary that this Court permanently enjoin and restrain Caswell W. Oden from disposing of, negotiating, or transferring said note; that petitioners - fear that the defendant will, during the pendency of these proceedings negotiate or transfer said note and that therefore it is necessary that this Court issue a preliminary writ of injunction in form and substance of the injunction above mentioned; that due to the fact that defendant may dispose, transfer, or negotiate said note and that immediate and irreparable injury, loss or damage may result to petitioners before notice *225 can be served and a hearing had on petitioners’ application for a preliminary injunction, in order to protect petitioners’ rights it is necessary that a temporary order in the form and substance of the injunction and preliminary injunction mentioned above issue herein.”
 It is manifest from the foregoing allegations that plaintiffs had an adequate remedy at law, compensable in a money judgment and sufficient facts are not’alleged to entitle plaintiffs to injunctive relief. The exception of no cause or right of action and the motion to dissolve should have been sustained. . We think defendant properly plead his damages sustained from the wrongful issuance of the temporary writ of injunction by way of reconvention and that adequate proof was made by Mr. Oden who testified that he engaged counsel for the purpose of securing a dissolution of the injunction, and through the testimony of Mr. Achee that the services enumerated to and observed by the expert witness should properly be fixed at $200 for the dissolution of the injunction and $350 for all services including the trial on the merits. Accordingly, we think attorney’s fees and statutory damages should be assessed as provided in Article 304 of the Code of Practice. The amounts allowed, however, should be reduced to $100 as attorney’s fees and $50 as statutory damages.
We have read with care the cases cited by plaintiffs announcing the general' rule that damages are not allowed for the dissolution of a preliminary injunction after a trial on the merits. These cases turn upon either the failure to properly present and prove the attorney’s fees actually incurred in the dissolution of the injunction, or upon the sufficiency of the alleged grounds for relief thus bringing the issue within the discretion of the Court.
For the foregoing reasons- the judgment appealed from is annulled and reversed, and now it is ordered, adjudged -and decreed that the demands of Johnnie Beeson and Gloria Jean Beeson, plaintiffs, against Cas-well W. Oden, defendant, be and the same are hereby rejected and plaintiffs’ suit dismissed, with costs; it is further ordered, adjudged and decreed that there be judgment in favor of Caswell W. Oden and against Johnnie Beeson and Gloria Jean Beeson, in solido, in the full sum of $400 with legal interest thereon from judicial demand until paid; for eight per cent (8%) per annum interest on $12.78 from April 6, 1950 until paid; for eight per cent (8%) per annum interest on the sum of $12.78 from May 6, 1950 until paid; and for attorney’s fees of twenty-five per cent (25%) of the total amount of principal and interest, subject to a credit of $30 as of May 28, 1951.
It is further ordered, adjudged and decreed that there be judgment in favor of Caswell W. Oden and against Johnnie Bee-son and Gloria Jean Beeson in the sum of $100 as attorney’s fees and $50 as statutory damages . for the illegal issuance of the writ of injunction.
Costs of appeal are assessed against appellees.
KENÑÓN, J., not participating.